# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MOHAMMAD MUSTAFA HAMIDI, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> PAMELA BONDI, Attorney General, et al., ) <br> ) <br> Respondents. ) | Case No. CIV-25-1205-G |

## REPORT AND RECOMMENDATION

Petitioner Mohammad Mustafa Hamidi, represented by counsel, filed a Verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1).[1] United States District Judge Charles B. Goodwin referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). Respondents filed a Response in Opposition to Petitioner's Verified Petition for Writ of Habeas Corpus. (Doc. 14). Petitioner filed a Reply. (Doc. 15). For the reasons set forth below, the undersigned recommends that Petitioner be **GRANTED** habeas relief and released from custody immediately.

---

[1] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

I.      **Factual Background and Procedural History**

Petitioner is a citizen of Afghanistan who entered the United States in 1993. (Doc. 1, at 1; Doc. 14, at 2). After a 1998 conviction for armed robbery and possession of a firearm or knife during commission of a felony, he was ordered removed from the United States on June 24, 2005. (Doc. 1, at 1; Doc. 14, at 2). Petitioner did not appeal his order of removal, and that order became final on July 24, 2005, or in the alternative, June 24, 2005, if he waived appeal. (Doc. 1, at 1). After serving his state sentence, Petitioner was transferred to the custody of Immigration and Customs Enforcement (ICE) on September 17, 2008. (Doc. 14, at Ex. 1, at 2). He was released on an Order of Supervision ("OOS") on February 10, 2009. (*Id.*) Petitioner complied with the OOS's requirements to appear for routine check-ins with ICE and updated his address, as required, whenever he relocated. (Doc. 1, at 2).

Petitioner alleges that he was wrongfully detained while reporting to his regular check-in on September 10, 2025. (*Id.*) He further alleges that he was never served with a proper Notice of Revocation of Release ("Notice") providing an explanation of why his OOS was being revoked, nor was he afforded any opportunity to challenge any Notice. (*Id.* at 13). Respondents contend that Petitioner was re-detained "since he had a final order of removal and there was a likelihood that he could be removed from the United States." (Doc. 14, at Ex. 1, at 2).

Petitioner contends that his detention is "designed to send a message to other individuals with final orders of removal that they need to leave the United States or they will be jailed indefinitely and without any process." (Doc. 1, at 4). Petitioner alleges he

2

cannot return to Afghanistan because he does not have the requisite travel documents. (*Id*.) Petitioner alleges:

> [He] does not have any proof of his Afghani citizenship. He was born at home during a war and has no birth certificate, passport, or other documentation of having been born in Afghanistan. [Petitioner's] family fled Afghanistan to Pakistan and entered the United States through Pakistan. When [Petitioner] applied for an Afghani travel document in 2009, he received a denial request on February 20, 2009 due to his lack of proof of Afghani citizenship.

(*Id*. at 2). He further alleges that "Afghanistan is currently run by the Taliban and does not have an embassy that is open." (*Id*. at 3).

Petitioner alleges that "to the best of [his] knowledge" no attempts at removal to a third country have been attempted since he was detained. (*Id*.) He has not been asked to apply for a travel document for any country since being detained. (*Id*.) Petitioner contends that "[t]he government is not in possession of any credible or persuasive documents or evidence that [his] removal is likely to occur in the reasonably foreseeable future." (*Id*.) Petitioner maintains that his "aggregate period of civil immigration confinement is believed to exceed six months and continues to grow." (*Id*. at 8).

Respondents contend that since Petitioner was taken into custody, ICE has "been working to obtain a travel document in order to remove [him]" and that ICE "is also looking into the possibility of a third country removal." (Doc. 14, at Ex. 1, at 2). Respondents also state that ICE has "contacted the Embassy of the Islamic Republic of Afghanistan in Canada to determine if they can issue a travel permit for [Petitioner]. In past cases, the Canadian Embassy has been able to issue travel documents for Afghanistan where the alien agrees to voluntarily return to Afghanistan." (*Id*. at 2-3). Respondents state that "[b]ecause

3

there are several avenues being pursued, and because the current administration is making efforts to remove aliens to third countries, . . . [Petitioner] could be removed at some point in the future."  (*Id*. at 3).

## II.     Petitioner's Claims

Petitioner alleges that "ICE has denied [him] release because: (A) it incorrectly believes [he] is responsible for reestablishing that removal is not substantially likely to occur in the reasonably foreseeable future, (B) ICE seeks to punish [him] for remaining in the United States after previously having been ordered removed, and (C) ICE seeks to punish [him] to send a message to similarly situated persons who have not yet been detained as a way to encourage those similarly situated people to immediately leave the United States to avoid [his] fate."  (Doc. 1, at 12).

In Count One, Petitioner requests "declaratory judgment pursuant to 28 U.S.C. § 2201 that [he] is detained pursuant to 8 U.S.C. § 1231(a)(1)," "that [he] has previously demonstrated to ICE's satisfaction that there is no significant likelihood of his removal in the reasonably foreseeable future ('NSLRRFF'), "that ICE did not rebut [his] prior NSLRRFF showing prior to redetaining him," and "that until ICE rebuts [his] prior NSLRRFF showing, [he] may not be redetained."  (*Id*. at 21).

In Count Two, Petitioner contends that his detention by Respondents violates the Immigration and Nationality Act and applicable ICE regulations.  (*Id*. at 21-22).

In Count Three, Petitioner raises two due process claims.  He states that his continued detention in excess of six months violates his "Fifth Amendment guarantee of due process" established in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), as Respondents

have not rebutted his prior showing of no significant likelihood of removal in the foreseeable future. (*Id*. at 22). And he alleges a separate due process claim based on his allegations that he has been detained "to punish him and to otherwise send a message to similarly situated individuals that they must leave the United States to avoid a similar fate." (*Id*. at 22-23).

In Count Four, Petitioner alleges that Respondents have violated the Administrative Procedures Act (APA) as "[their] decisions, which represent changes in the agencies' policies and positions, have considered factors that Congress did not intend to be considered, have entirely failed to consider important aspects of the case, and have offered explanations for their decisions that run counter to the evidence before the agencies." (*Id*. at 23). He alleges that Respondents' decision to re-detain him is "arbitrary, capricious, and not in accordance with the law." (*Id*.)

Petitioner also requests a temporary restraining order and preliminary injunction "enjoining Respondents . . . [from] continuing to infringe on [his] constitutional rights" and preventing Respondents from removing or transferring him outside of the State of Oklahoma pending the disposition of his habeas petition, as well as "an emergency preliminary order requiring Respondents to give [him] due process prior to removing him to an allegedly safe third country in the form of a full merits hearing for asylum, withholding of removal, and [Deferral of Removal under the Convention Against Torture (DCAT)] before an immigration judge . . . with a right to an administrative appeal to the Board of Immigration Appeals." (Doc. 6, at 1-2).

Respondents are sued in their official capacities. (Doc. 1, at 8-10).

### III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas*, 533 U.S. at 687; *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas."); *Head v. Keisler*, No. 07-CIV-402-F, 2007 WL 4208709, at *2 (W.D. Okla. Nov. 26, 2007) (determining that "[t]his Court has subject matter jurisdiction over" unconstitutional detention in immigration-related § 2241 habeas petition).

### IV. Legal Framework for the Continued Detention of Aliens Subject to a Final Order of Removal

Title 8, Section 1231(a)(2)(A) of the United States Code mandates that "the Attorney General shall detain" an alien who is ordered to be removed from the country. However, the length of detention cannot be indefinite: in general, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." § 1231(a)(1)(A). This is known as the "removal period," and begins at the latest of (1) "[t]he date the order of removal becomes administratively final," (2) "the date of the court's final order" when a removal order is judicially reviewed, or (3) " the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime). *Id. See Zadvydas*, 533 U.S.

6

at 682 ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody.").

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall [ordinarily] be subject to supervision." 8 U.S.C. § 1231(a)(3). However, an exception exists for certain aliens, including aliens who have violated criminal law, who "may be detained beyond the removal period." § 1231(a)(6); *see Zadvydas*, 553 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)); *Head*, 2007 WL 4208709, at *2 ("If an alien is not deported during the 90-day removal period, certain classes of aliens, including inadmissable aliens and criminal aliens, may continue to be subject to detention if they have not yet been removed."). "Related [ICE] regulations add that [ICE] will initially review the alien's records to decide whether further detention or release under supervision is warranted after the 90–day removal period expires." *Zadvydas*, 553 U.S. at 683 (explaining various provisions of 8 C.F.R. § 241.4).

Section 1231(a)(6) does not specify how long criminal aliens may be detained beyond the removal period. However, the *Zadvydas* Court held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. The Court further specified that detention is presumptively reasonable for only six months beyond the original 90-day

7

removal period. *Id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*.

Following the Supreme Court's holding, the *Zadvydas* challenge to continued detention was codified into the immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.[2] The new regulations were in place at the time of Petitioner's first ICE detention in September 2008, his release on supervision in February 2009, and his re-detention in September 2025.

## V. ICE Failed To Abide By Its Regulations When It Revoked Petitioner's OOS.

In Count Two, Petitioner alleges that Respondents failed to comply with the Immigration and Nationality Act and ICE's applicable regulations "prior to redetaining [him] after [his] release on an OOS." (Doc. 1, at 21). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S.

---

[2] *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247(F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future. Except as provided in this new § 241.13, the existing detention standards in § 241.4 will continue to govern the detention or release of aliens who are subject to a final orders of removal. Thus, aliens who are determined not to be a danger to the community or a flight risk may be released under § 241.4 regardless of whether there is a significant likelihood of removal.").

292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

The re-detention of Petitioner is governed by 8 U.S.C. § 1231(a)(3) and its related regulations as Petitioner was released on an OOS on February 10, 2009, after being in ICE detention for 146 days. (Doc. 14, at Ex. 1, at 2). Petitioner alleges that "[t]he OOS [was] issued pursuant to 8 C.F.R. § 241.4(e) and 8 C.F.R. § 241.13[3] because it was determined there was no significant likelihood of removal in the reasonably foreseeable future," and "it was necessarily determined at that time that [he] did not present an ongoing danger or a flight risk." (Doc. 1, at 2). So, the issue before the Court is whether Petitioner's OOS was properly revoked when he was re-detained into ICE custody. The undersigned determines that it was not.

---

[3] 8 C.F.R. § 241.4(e) permits for release of an alien when, *inter alia*, "[t]ravel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest." It does not require ICE to determine the likelihood of removal. 8 C.F.R. § 241.13 specifically requires such a determination. ICE has exceptionally broad authority to revoke release under § 241.4. *See* § 241.4(l)(2) (permitting revocation when in the discretionary opinion of the revoking official "[i]t is appropriate to enforce a removal order" or "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."). However, revocation of release under § 241.4 entitles the alien to certain review procedures that trigger review under § 241.13. *See* § 241.4(i)(7) ("During the custody review process . . . if the alien submits, or the record contains, information providing a substantial reason to believe that the removal of a detained alien is not significantly likely in the reasonably foreseeable future, [ICE] shall treat that as a request for review and initiate the review procedures under § 241.13.").

9

Neither party has presented the court with a copy of Petitioner's 2009 OOS. Respondents do not specify why the OOS was originally issued, nor do they rebut Petitioner's allegations that he was released in 2009 because it was determined there was no significant likelihood of his removal in the reasonably foreseeable future. (*See* Doc. 14, Ex. 1 at 2). Rather, Respondents state that on September 10, 2025, Petitioner "was taken into ICE custody since he had a final order of removal and there was a likelihood that he could be removed from the United States." (*Id*.) So, it is reasonable to infer that ICE must have made a determination that "there was no significant likelihood of removal in the reasonably foreseeable future," 8 C.F.R. § 241.13(a), (b)(1), before issuing the OOS in 2009.

ICE may revoke an OOS and "return the alien to custody" if the alien violates the conditions of supervised release or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Respondents do not allege that Petitioner violated any conditions of release, (*see* Doc. 14), so it appears that Respondents rely solely on the "changed circumstances" prong as the justification for revocation.

Respondents have failed to demonstrate that ICE determined there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future before revoking Petitioner's OOS and detaining him. Significantly, Respondents have not presented the court with a copy of the 2025 Notice of Revocation of Release, which should have been provided to Petitioner and stated the reasons for revocation of release. *See* 8 C.F.R. § 241.13(i)(3) ("Upon revocation, the alien will be notified of the reasons for revocation of

10

his or her release."); § 241.13(g) ("[ICE] shall issue a written decision . . . regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances. [ICE] shall provide the decision to the alien, with a copy to counsel of record, by regular mail."). Moreover, the declaration that has been provided by Respondents to the court states merely that Petitioner was re-detained "since he had a final order of removal and there was a <u>likelihood</u> that he could be removed from the United States." (Doc. 14, at Ex. 1, at 2) (emphasis added). This statement does not even make a conclusory allegation that satisfies the regulatory standard of a determination that "there is a <u>significant</u> likelihood that the alien may be removed <u>in the reasonably foreseeable future</u>." 8 C.F.R. § 241.13(i)(2).

  The declaration makes no attempt to address Petitioner's factual allegations that (1) he "does not have any proof of his Afghani citizenship" – "no birth certificate, passport, or other documentation of having been born in Afghanistan;" that "[w]hen [Petitioner] applied for an Afghani travel document in 2009, he received a denial request on February 20, 2009 due to his lack of proof of Afghani citizenship;" and that "Afghanistan is currently run by the Taliban and does not have an embassy that is open." (Doc. 1, at 2-3). Rather, the Respondents state that ICE has "contacted the Embassy of the Islamic Republic of Afghanistan in Canada to determine if they can issue a travel permit for [Petitioner]. In past cases, the Canadian Embassy has been able to issue travel documents for Afghanistan where the alien agrees to voluntarily return to Afghanistan." (Doc. 14, at Ex. 1, at 2-3). Respondents provide no information about whether the Canadian Embassy has responded to ICE's inquiry about Petitioner specifically or even more generally about whether it can

11

or has been able to issue travel documents for those similarly situated to Petitioner – residents of the United States who have no proof of birth or citizenship and are facing an involuntary return to Afghanistan. Thus, while Respondents contend that they "have been working to obtain a travel document" for Petitioner, (Doc. 14, at Ex. 1, at 2), this is insufficient to establish that there is a significant likelihood that Petitioner may be removed to Afghanistan in the reasonably foreseeable future.

With regard to other options, Respondents offer that ICE "is also looking into the possibility of a third country removal" and that "because the current administration is making efforts to remove aliens to third countries, . . . [Petitioner] could be removed at some point in the future." (Doc. 14, at Ex. 1, at 2-3). Respondents are unable to name any such third country possibilities. Again, this conclusory statement of non-specific effort and speculation does not suffice to establish that there is a significant likelihood that Petitioner may be removed to a third country in the reasonably foreseeable future. *See Yee S. v. Bondi*, 2025 WL 2879479, at *5 (D. Minn. Oct. 9, 2025) (finding that "the record does not support a determination that Petitioner is significantly likely to be removed in the reasonably foreseeable future" when Petitioner's home country of Burma was not an option for removal, ICE could "direct the Court to no facts in the record supporting a conclusion that any specific country where Petitioner is not a citizen would agree to accept him," and "Respondents simply repeat the vague and conclusory assertions that 'ICE is in the process of obtaining a travel document'"); *Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sept. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will

begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (record citations omitted); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Roble v. Bondi*, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (finding insufficient the government's assertion that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ").

The ICE regulations specifically state: "[w]here the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, *but the prospects for the timeliness of removal must be reasonable under the circumstances*." 8 C.F.R. § 241.13(f) (emphasis added). The Federal Register commentary for § 241.13 similarly advised that

> [a]lthough [§ 241.13] does not set a specific time limit for consultation with the State Department, or for the Service's final decision on the likelihood of removal in the reasonably foreseeable future, the HQPDU will have to be mindful of the overall purposes of the detention laws, as interpreted by the Supreme Court. The time for the Service to determine the likelihood of removal must also be reasonable under the circumstances, in light of the interests at stake. The HQPDU review process should not, itself, give rise to the same kinds of concerns about "indefinite, perhaps permanent" detention that troubled the Supreme Court. *See Zadvydas*, at 2503 ("for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' would have to shrink.").

Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56970, 2001 WL 1408247(F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241).  Respondents' contention that Petitioner could be removed to a third country "at some point in the future," (Doc. 14, at Ex. 1, at 3), does not establish a reasonable timeline.

Thus, Respondents have failed to show that ICE abided by its own regulations in making the decision to revoke Petitioner's OOS, making the revocation unlawful.  "ICE, like any agency, has the duty to follow its own federal regulations.  As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid." *Nguyen v. Hyde*, 2025 WL 1725791, *5 (D. Mass. June 20, 2025) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017)); *see Qui v. Carter*, 2025 WL 2770502, at *1-2 (D. Kan. Sept. 26, 2025) (finding that failure to properly revoke the petitioner's OOS "pursuant to the applicable regulations" rendered revocation ineffective).

Based on ICE's violations of its own regulations, the undersigned concludes that Petitioner's detention is unlawful and that his release is appropriate under 28 U.S.C. § 2241(c)(3).  *See Tran v. Bondi*, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025) (finding that Petitioner showed his re-detention did not comply with the requirements set forth by 8 C.F.R. § 241.13 and granting habeas relief); *Soryadvongsa v. Noem*, 2025 WL 3126821, at *3 (S.D. Cal. Nov. 8, 2025) ("The government's authority to civilly detain anyone is strictly confined [by the INA regulations]. [Petitioner] has carried his burden of establishing that ICE exceeded those uncompromising bounds and that his custody is unlawful. Thus, he must be set free."); *Phongsavanh v. Williams*, --- F. Supp. 3d ----, 2025

WL 3124032, at *6 (S.D. Iowa Nov. 7, 2025) (holding that "[t]he Government has failed to carry its burden under 8 C.F.R. § 241.13(i)(2). That regulation embodies the Executive Branch's own procedural requirements, and agencies must comply with the rules they promulgate" and granting habeas relief); *Rasakhamdee v. Noem*, 2025 WL 3102037, at *5 (S.D. Cal. Nov. 6, 2025) ("Government agencies are required to follow their own regulations. ICE failed to do so here. The Court's research indicates that every district court, except two, to consider the issue has 'determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'") (internal citation and footnote omitted); *C.M. v. Maples*, 2025 WL 3102037, at *5 (S.D. Ind. Nov. 5, 2025) (same); *E.M.M. v. Almodovar*, 2025 WL 3077995, at *4 (S.D.N.Y. Nov. 4, 2025) (holding that "[i]f the Government's violation of its own regulations culminates in an alien's detention, due process may require that alien's release" and granting habeas relief); *Yee S.*, 2025 WL 2879479, at *6 (ordering release because Petitioner has shown that ICE's re-detention of him . . . violated the law because ICE did not comply with its own regulations under section 241.13(i)(2)"); *Roble*, 2025 WL 2443453, at *5 (holding that "[i]t goes without saying that ICE, like all government agencies, must follow its own regulations" and ordering release based on violation of 8 C.F.R. § 241.13(i)); *Sarail A. v. Bondi*, 2025 WL 2533673 (D. Minn. Sept. 3, 2025) (ordering release based on violation of 8 C.F.R. § 241.13(i)).

## VI. Petitioner's Other Causes of Action and Requests for Relief

The undersigned does not address Petitioner's remaining arguments as to how the revocation of his release is otherwise unlawful under the APA or under *Zadvydas*. The

undersigned also declines to address Petitioner's request for declaratory judgment as to the legality and nature of his detention under ICE regulations and whether ICE's actions were arbitrary and capricious as his immediate release, if this Report and Recommendation is adopted, will moot these requests. Adoption of this Report and Recommendation will likewise render moot Petitioner's pending emergency motion for temporary restraining order and preliminary injunction (Doc. 6).

**VII.    Recommended Ruling and Notice of Right to Object**

For the reasons discussed above, the undersigned recommends that the Verified Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED to the extent it requests habeas relief under 28 U.S.C. § 2241.** The undersigned recommends that the Court order Respondents **to release Petitioner from custody immediately**, subject to an appropriate Order of Supervision. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated.").

The pending Emergency Motion or Request for Expedited Handling (Doc. 5) and Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6) should be **denied as moot**.

**The court advises the parties of their right to object to this Report and Recommendation by November 21, 2025**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[4] The Court further advises the parties that failure to make timely objection to

---

[4] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to seven days. *See* Fed. R. Civ. P.

16

this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 14th day of November, 2025.

*/s/ Amanda L. Maxfield*<br>
AMANDA L. MAXFIELD<br>
UNITED STATES MAGISTRATE JUDGE

---

72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").