UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MOHAMMAD MUSTAFA HAMIDI, )
)
    Petitioner, )
)
v. ) Case No. CIV-25-1205-G
)
)
PAMELA BONDI, Attorney General, )
et al., )
)
    Respondents. )

# ORDER

On October 13, 2025, Petitioner Mohammad Mustafa Hamidi, appearing through counsel, filed a Verified Petition for Writ of Habeas Corpus ("Petition," Doc. No. 1) challenging his detention by U.S. Immigration and Customs Enforcement ("ICE") pursuant to 28 U.S.C. § 2241. In accordance with 28 U.S.C. § 636(b)(1), the matter was referred to Magistrate Judge Amanda L. Maxfield for preliminary review. Certain Respondents[1] filed a Response (Doc. No. 14) to the Petition, and Petitioner filed a Reply (Doc. No. 15).

On November 14, 2025, Judge Maxfield issued a Report and Recommendation ("R. & R.," Doc. No. 16), recommending that the Petition be granted and Petitioner be released

---

[1] Respondent Scarlet Grant, Warden of Cimarron Correctional Facility, has not appeared in this action or joined in the other respondents' filings. The appearing respondents are: Pamela Bondi, United States Attorney General; Kristi Noem, U.S. Secretary of Homeland Security; Todd M. Lyons, Acting Director of ICE; Marcos Charles, Acting Executive Associate Director, ICE Enforcement and Removal Operations ("ERO"); Mark Siegel, Oklahoma City Field Office Director for ERO; ICE; and U.S. Department of Homeland Security.

from custody. Respondents filed an Objection (Doc. No. 17) to the R. & R, to which Petitioner responded (Doc. No. 18).

Pursuant to controlling authority, the Court reviews de novo the portions of the R. & R. to which specific objection has been made. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

I.  Background

The factual background is set forth in the R. & R. and not contested by either party. Petitioner is a citizen of Afghanistan who entered the United States in 1993. After a 1998 criminal conviction in state court, Petitioner was ordered removed from the United States on June 24, 2005. The order of removal became final in June or July of 2005. *See* R. & R. at 2.

After serving his state criminal sentence, Petitioner was transferred to the custody of ICE on September 17, 2008. He was released by ICE on an Order of Supervision ("OOS") on February 10, 2009. *Id.*

From 2009 until 2025, Petitioner complied with the OOS's requirements to appear for routine check-ins with ICE and updated his address, as required, whenever he relocated. *See id.* Petitioner alleges that he has been wrongfully held by ICE since he was "picked up and redetained" while reporting to his regular check-in on September 10, 2025. Pet. ¶¶ 1, 7. Petitioner is presently housed at the Cimarron Correctional Facility, an ICE facility located in Cushing, Oklahoma. *Id.* ¶ 11; *see* R. & R. at 2.

*II.    Relevant Standards*

"The Government's ability to detain, release, and revoke the release of noncitizens subject to removal orders is governed by specific regulations." *Phongsavanh v. Williams*, No. 25-cv-00426, __ F. Supp. 3d __, 2025 WL 3124032, at *2 (S.D. Iowa Nov. 7, 2025). Pursuant to 8 U.S.C. § 1231(a), the Attorney General "shall detain" a noncitizen who is ordered to be removed; this period of detention is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A), (2)(A); *see also Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody.").

Section 1231(a)(3) prescribes that when a noncitizen is not removed within this removal period, he or she may be released subject to "supervision" as set forth by relevant regulations. 8 U.S.C. § 1231(a)(3); *see* 8 C.F.R. §§ 241.4, 241.13. Federal authorities may revoke an order of supervised release and "return the alien to custody" "if," as relevant here, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Such a determination of "changed circumstances" triggers a notification requirement and a review process:

> *Revocation procedures*. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or

3

she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future . . . . The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* § 241.13(i)(3).

### III. Discussion

In the R. & R., Judge Maxfield concluded that Petitioner's detention is unlawful due to ICE's failure to follow required procedures in revoking Petitioner's OOS and that Petitioner therefore is entitled to release under 28 U.S.C. § 2241(c)(3). *See* R. & R. at 8-15; 28 U.S.C. § 2241(c)(3) (prescribing that habeas corpus relief is available to a prisoner "in custody in violation of the . . . laws . . . of the United States").[2]

The Magistrate Judge found that ICE failed to comply with 8 C.F.R. § 241.13(i)(3) in re-detaining Petitioner. The Court agrees with and adopts the Magistrate Judge's findings in this regard. The parties do not dispute the basic timeline of Petitioner's initial detention, release subject to an OOS, and recent re-detention, including that (1) on February 10, 2009, Petitioner was released from ICE custody subject to the post-removal-notice OOS, and (2) on September 10, 2025, Petitioner was attending a regular "check-in" meeting as required by the OOS and at that time taken back into ICE custody.

---

[2] Based upon this determination, the Magistrate Judge did not reach Petitioner's remaining claims for relief, request for declaratory judgment, or motion for injunctive relief. *See* R. & R. at 15-16; Pet. at pp. 19-26; Pet'r's Mot. (Doc. No. 6).

Respondents first object that ICE has broad discretion under title 8, section 241.4 of the Code of Federal Regulations to revoke release of a noncitizen. *See* Resp'ts' Obj. at 2-3. But Respondents' own evidence reflects that the impetus for Petitioner's re-detention on September 10, 2025, was that "there was a likelihood that he could be removed from the United States." Resp'ts' Ex. 1, M. Thompson Decl. ¶ 11 (Doc. No. 14-1). This was plainly a § 241.13(i) revocation, and Respondents' reference to a separate regulation is of no moment.[3]

Respondents notably do not object to the R. & R.'s conclusion that Petitioner was denied the process required by § 241.13(i). As noted by the Magistrate Judge, there has been no showing that, after electing to revoke Petitioner's release, ICE "notified" Petitioner of the revocation of the OOS and the reasons therefor. 8 C.F.R. § 241.13(i)(3); *see* R. & R. at 10-11; *see also* Pet. ¶ 50 ("Hamidi does not recall ever having been served with a Notice of Revocation of Release ('Notice') purporting to revoke his OOS[;] nor does he recall having been given any sort of informal interview to challenge the Notice."). Respondents essentially concede ICE's failure to comply with this requirement, stating that they "are unable to verify that upon his re-detention [Petitioner] received a formal Notice of Revocation of Release." Resp'ts' Obj. at 4.

---

[3] Even if Petitioner's release and ICE's subsequent revocation of that release were subject to 8 C.F.R. § 241.4, that regulation requires ICE to "initiate the review procedures under § 241.13" whenever "the alien submits, or the record contains, information providing a substantial reason to believe that the removal of a detained alien is not significantly likely in the reasonably foreseeable future." 8 C.F.R. § 241.4(i)(7).

Nor is there any genuine dispute that ICE deprived Petitioner of the right to respond as required by § 241.13(i)(3). That regulation "contemplate[s] that a noncitizen will have an opportunity to 'respond to the reasons for revocation stated in the notification' during the initial informal interview after re-detention." *Roble v. Bondi*, No. 25-cv-3196, __ F. Supp. 3d __, 2025 WL 2443453, at *3 (D. Minn. Aug. 25, 2025) (quoting 8 C.F.R. § 241.13(i)(3)); *see Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (W.D Okla. Nov. 20, 2025). In this proceeding, Respondents do not argue or present evidence reflecting that ICE conducted the "initial informal interview" required by § 241.13(i)(3). And even if there was an interview, because Petitioner had not been notified previously of the reasons for his revocation and re-detention he would not have been able to meaningfully respond to those reasons. *Cf. Roble*, 2025 WL 2443453, at *3 (finding that re-detained noncitizen "cannot be expected to respond to the reasons for revocation stated in the notification" when the notice did not state any reasons).

Respondents do, however, object to the Magistrate Judge's resolution of the resulting question: whether ICE's denial to Petitioner of the process required by § 241.13(i) demands the extraordinary relief of issuance of a writ of habeas corpus. The Court agrees that it does. A judge of this Court has recently noted that "[a] majority of district courts have found that such regulatory defects amount to due process violations that entitle a petitioner to habeas relief." *Pham*, 2025 WL 3243870, at *1 (citing cases). The question was persuasively addressed by another district court some time before:

> ICE, like any agency, has the duty to follow its own federal regulations. To be sure, not every procedural misstep raises a constitutional issue. However, where an immigration regulation is promulgated to protect a

6

> fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and ICE fails to adhere to it, the challenged action is invalid.

*Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (alteration, omission, citations, and internal quotation marks omitted); *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)). Under the facts and circumstances of this case, the undersigned agrees that ICE's violation of § 241.13(i) denied Petitioner the process to which he was entitled by law and that such a denial entitles Petitioner to habeas relief. *See Pham*, 2025 WL 3243870, at *1; *Roble*, 2025 WL 2443453, at *3-5; *see also Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *8 (W.D. Okla. Oct. 15, 2025) (R. & R.), *adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025).

Citing another recent decision from a judge of this Court, Respondents argue that a violation of 8 C.F.R. § 241.13(i) is not the type of "constitutional wrong" that warrants habeas relief. *See* Resp'ts' Obj. at 4-6 (citing *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932 (W.D. Okla. Oct. 31, 2025), *appeal docketed*, No. 25-6177 (10th Cir. Nov. 4, 2025)). But this is a very different case than *Bahadorani*. The defective process at issue here—a complete failure to provide notice or engage in the interview that allows a released noncitizen to challenge the revocation of that release, both expressly required by § 241.13(i)—materially differs from the circumstances described in *Bahadorani*, where despite the absence of a formal notice the re-detained noncitizen was provided two post-detention interviews, advised of "the reasons for his detention," and

7

allowed "to submit information concerning his custody." *Bahadorani*, 2025 WL 3048932, at *3.

Respondents also suggest that the violation of § 241.13(i) at issue here may be cured by merely ordering compliance with that provision. *See* Resp'ts' Obj. at 5-6. As an initial matter, Respondents cite no authority for their argument that directing compliance is, in and of itself, "the appropriate remedy" for the unlawful detention of Petitioner. *Id.* More fundamentally, while in other circumstances the Court might consider a conditional grant of a writ of habeas corpus (for example, ordering that Petitioner be released unless it is shown that the requirements of § 241.13(i) are met by a stated deadline), the circumstances here do not support such an approach. Respondents do not specifically challenge the Magistrate Judge's finding that the record reflects no "significant likelihood" that Petitioner "may be removed in the reasonably foreseeable future." R. & R. at 11-14. And the undersigned discerns no error therein.

Indeed, the Magistrate Judge correctly highlights that the evidence presented by Respondents—principally, a single statement in a declaration that "there was a likelihood that [Petitioner] could be removed," M. Thompson Decl. ¶ 11—falls short of what is required by § 241.13(i)(2). *See* R. & R. at 10-15. That regulation, again, permits Petitioner's release to be revoked when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The Court concurs that the declaration's assertion of a *mere* likelihood (i.e., with no claim to a significant likelihood) that Petitioner *could* be removed (i.e., with no claim to removal in the reasonably

8

foreseeable future) is inadequate to satisfy § 241.13(i)(2).  *See* R. & R. at 11-12; M. Thompson Decl. ¶ 11.  The declaration's remaining assertions, correctly characterized by the Magistrate Judge as amounting to a "conclusory statement of non-specific effort and speculation," do not bridge the gap.  R. & R. at 11-12; M. Thompson Decl. ¶¶ 12-14 ("Because there are several avenues being pursued, and because the current administration is making efforts to remove aliens to third countries, I believe [Petitioner] could be removed at some point in the future."); *see also Momennia*, 2025 WL 3006045, at *1 (finding that respondents did not rebut petitioner's showing that there is good reason to believe that there is no significant likelihood of removal when respondents presented evidence that government agencies were "working together on a third-country removal" but did not "identif[y] any countries with which any level of progress ha[d] been made toward obtaining the country's acceptance of" the petitioner).

Because Petitioner has shown that he is "in custody in violation of the . . . laws . . . of the United States," he is entitled to habeas relief.  28 U.S.C. § 2241(c)(3).  Having resolved the illegality of Petitioner's current detention, his remaining requests for relief will be dismissed.

## CONCLUSION

In accordance with the above, the Report and Recommendation (Doc. No. 16) is ADOPTED in relevant part.

IT IS FURTHER ORDERED:

1. Petitioner's Verified Petition for Writ of Habeas Corpus (Doc. No. 1) is GRANTED to the extent it requests habeas relief pursuant to 28 U.S.C. § 2241.

2. Petitioner's remaining claims for relief are DISMISSED without prejudice.

3. Respondents are directed to immediately release Petitioner Mohammad Mustafa Hamidi, subject to the terms of his previous Order of Supervision;

4. Respondents shall submit a declaration pursuant to 28 U.S.C. § 1746 within three (3) days of the date of this Order affirming Petitioner's release from custody; and

5. Petitioner's remaining Motions (Doc. Nos. 5, 6) are DENIED AS MOOT.

IT IS SO ORDERED this 1st day of December, 2025.

_____
CHARLES B. GOODWIN
United States District Judge